WATSON, Judge.
This is a left turn case in which defendant,. Arthur Smash, was turning left on Lee Street in Alexandria when his vehicle was struck by a pickup truck owned by the plaintiff, Harold J. Chaudoir, and driven by Chaudoir’s employee, Johnny L. Gau-thier. The date of the accident was October 8, 1971 and the time was approximately 4:00 p.m. in the afternoon.
The defendant was proceeding in a westerly direction, away from the downtown area and toward MacArthur Drive while the plaintiff’s truck was proceeding in an easterly direction or toward town. Lee Street, at the scene of the accident, is a four lane roadway and the defendant turned left across the path of the pickup truck.
The only testimony was that of the two drivers, a passenger in the pickup and the investigating police officer. It indicated that when defendant made his turn, the other driver applied his brakes and the pickup skidded some SO feet veering towards its right and striking the defendant’s automobile some 4 to 6 feet off the street on the curb.
The amount of the damages was stipulated and there is no quarrel as to this feature of the case.
The trial judge heard the witnesses, evaluated their testimony with a correct appreciation of the legal principles involved, and then, in our opinion, reached a correct conclusion. Therefore, we will quote the pertinent portion of the trial judge’s opinion with approval:
“At the time of the accident the Defendant, Mr. Smash, was traveling in a westerly direction, or away from Alexandria, on Lee Street extension, going to the Louisiana Fountain Supply on that street. The ’65 Chevrolet pickup truck owned by the Plaintiff, Harold Chaudoir, was being driven by an employee, Johnnie L. Gau-thier, coming into town, or easterly on Lee Street Extension, at the time of the accident. Mr. Smash made a left turn going into the Fountain Supply driveway. It is *481 Plaintiff’s position that at the time, date and place that I have outlined the cause of the accident was the turning left of the Smash ’67 Ford automobile in front of the Plaintiff’s truck. As a result of the accident he request the cost of repair of his vehicle in the amount of ($360.57), and request loss of use of the vehicle, stipulated to he ($130), for a total of ($490.57) worth of damages.
“It is the Defendant’s position that in traveling west on Lee Street Extension, he had negotiated his left turn and he was struck actually on the apron of the highway in the parking area of Louisiana Fountain Supply. He claims the accident was due solely to the negligence of Mr. Gauthier, driver of the Plaintiff’s truck, and alternatively he pleads the doctrine of contributory negligence.
“We have a situation with a left turning motorist and an oncoming car in which we have an impact. The law is very clear in connection with an accident under this posture, that if the accident occurs while the motorist is negotiating such a turn, the duty weighs heavily upon him to explain how the accident occurred and that he was free from fault in negotiating the turn. A left turn can only be made when it will not endanger oncoming or overtaking traffic.
“As this Court mentioned this morning, I have no doubt that there was negligence on the part of Mr. Smash in making the left turn in question. He is at fault in the accident.
“The more difficult issue, and the one that I have spent time in reflecting and reviewing my notes, the exhibits and the law involved, is whether there was any negligence on the part of Mr. Gauthier, which would be imputed to Mr. Chaudoir, the owner, in connection with this accident. The testimony in this area is that of Mr. Gauthier, which basically was that the vehicle hit on the road. Which I find the vehicle had an accident, it was not in Mr. Gauthier’s lane of traffic, but was on the apron. He tells us that the Smash vehicle cut right in front of him and he did not see this vehicle until it was in the inside lane coming in an easterly direction of the right of way for approaching vehicles. Mr. Gauthier was in the curb lane or outside lane. He said the distance was very close, he hit his brakes, he couldn’t stop and the impact occurred. He could not give me any distance factors or information in this regard.
“Riding in the truck was Mr. Shivers, who was a co-worker of Mr. Gauthier. His testimony basically is the same as Mr. Gauthier’s. He does put the impact of the collision with the right wheels of the Chaudoir pickup on the shoulder of the road, which is basically consistent with the testimony of Officer Thiels and that of Mr. Smash. He does give a distance, he felt, of about (50) feet when he saw the Smash vehicle turn left, crossing over to Louisiana Fountain.
“Officer Thiels tells us of the location of the damage to the vehicles and placed the point of impact (4) to (6) feet off the road surface itself on the apron.
“Mr. Smash is a (68) year old male, who was going to Louisiana Fountain, his testimony basically is consistent. He says that the rear of his car was about (6) feet off the driveway when the back of his car was hit by the front of the Gauthier — or I should call it the Chaudoir pickup truck.
“The damage was found by Officer Thiels to be the right rear side of the Smash vehicle and the front and front right of the Gauthier vehicle.
“Mr. Smash tells us that he saw the Gauthier vehicle and it was (3) to (4) seconds between the time he saw him and he (Smash) speeded up to get out of the way before the impact occurred.
“So, the issue to be resolved by the Court is was there any negligence on behalf of Mr. Gauthier.
*482 “The Defendant claims that Mr. Gau-thier failed to maintain a proper lookout prior to the accident.
“Mr. Gauthier said that he did not have time to do anything and the first time he saw this Smash vehicle it had already started across in the eastern lanes of travel.
“Mr. Shivers tells us that he saw the Smash vehicle turn left and that Mr. Gau-thier put on the brakes at approximately the same time, and therefore at the time the Smash vehicle did come into the eastern lanes of travel, apparently, Mr. Gau-thier’s reaction was as simultaneous, believing Shivers’ testimony, as it could be.
“The next complaint is that he (Gau-thier) was operating the pickup at an excessive rate of speed. The skid marks found by Officer Thiels were (SO) feet. It is very interesting to note on Defendant’s exhibit that was put in evidence that the feet traveled per second is (S1.33) feet, at a speed of (35) miles per hour, which was the speed limit on Lee Street Extension at the time of the accident. The braking time ranges from (46) to (S3) feet plus reaction time totaled together between (83) to (90) feet. Meaning, with (SO) feet of skid marks and normal reaction, the time factor as defense argues, is about a distance of (90) feet, which would show a speed of (35) miles per hour. So, this Court does not find the Defendant has come forward with the necessary evidence to prove an excessive rate of speed above that. There is damage to the vehicles that is not considerable, but our law, likewise, says that in order for the violation of the speed to constitute negligence on the part of the offending vehicle, it must be shown that the degree of excess speed was a cause in fact of the accident and the cases hold that exceeding a designated speed limit does not constitute contributory negligence where it has no cause or connection with the accident in question.
“The next complaint is driving the pickup truck off the paved portion of Lee Street. Well, here we have a situation where a man sees a car turn in front of him, he hits his brakes and the car brakes lock and the car skids to the right shoulder and there is an accident. He says that he had not time to do anything about it. Mr. Shivers puts his reaction as fast as his when he saw the car turn. Mr. Smash says (3) to (4) seconds was his approximation. Well, at (35) miles per hour you are traveling (51.33) feet per second and even if Mr. Smash’s estimate of (3) to (4) seconds is correct, you are dealing with (150) feet in (3) seconds. I do not find that Mr. Gauthier had time, nor does the law require under a sudden emergency, that his reaction be the best judgment under the circumstances present, as long as he acts as a prudent man, even though the accident might have occurred on the apron.
“The failure to maintain a lookout and failure to take necessary steps actually are covered within the other proportions of the opinion.
“So, looking at the overall picture, I find that Mr. Smash, the Defendant, was negligent. I do not find proof has been adduced that there was contributory negligence on behalf of Mr. Gauthier; therefore, the cause of this accident was the sole negligence of the Defendant, Mr. Smash.
“Judgment is awarded to Plaintiff in the amount of ($490.57) with Defendant cast for all costs.” (TR. 67, 68, 69, 70 and 71).
Therefore, we affirm the judgment of the trial court with costs of the appeal to be taxed against the appellant.
Affirmed.